UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| WARREN BALTES, | **DECISION AND ORDER** |
| Plaintiff, | |
| v. | 1:17-CV-00211(JJM) |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |
| Defendant.[1] | |

---

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [10, 12],[2] which the parties have consented to be addressed by me [14]. Having reviewed the parties' submissions [10, 12, 13], plaintiff's motion is granted and the Acting Commissioner's motion is denied.

**BACKGROUND**

In May 2013 plaintiff, who was 37 years old, filed applications for DIB and SSI, alleging a disability onset date of June 1, 2010, due to a fractured T12 vertebrae and pain in both

---

[1] Since Nancy A. Berryhill is now the Acting Commissioner of Social Security, she is substituted for Carolyn W. Colvin as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). *See* Quintana v. Berryhill, 2017 WL 491657, *7 n. 1 (W.D.N.Y. 2017).

[2] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

knees. Administrative record [7], pp. 148-153, 166. Plaintiff sustained a compression fracture of a thoracic vertebra in 2010, which was treated with a brace. Id., p. 218. According to James Budny, M.D., he was "doing well", and although he was involved in an altercation in September 2011 which caused some soft tissue injuries, he was determined to be "neurologically intact and . . . almost pain free". Id., p. 220.

Plaintiff first sought treatment for knee pain in May 2012, and a July 2012 MRI revealed a grade III tear of the anterior cruciate ligament of his left knee, but because of a lack of periligamentous edema or hemorrhage, it was believed that it was a "subacute to chronic injury". Id., pp. 233, 255. Peter Shields, M.D., opined that the injury dated back to 2001 and that it had not caused "any significant disability' for the prior eleven years. Id., pp. 279, 300. Plaintiff was also diagnosed with a bucket handle tear of his medial meniscus, for which he underwent arthroscopic surgery in August 2012. Id., pp. 233, 275-76.

In May 2013, plaintiff reinjured his knee and was seen several times thereafter for complaints of pain, tingling and weakness in his knee, but his range of motion and strength were normal. Id., pp. 261, 264. For treatment he was given a cortisone injection and attended physical therapy. Id., p. 262.

At his September 4, 2013 consultative examination with Hongbiao Liu, M.D., plaintiff complained only of low back pain radiating into his legs. Id., p. 291. Plaintiff informed Dr. Liu that it required him to change positions after five minutes while sitting or standing. Id. Dr. Liu diagnosed plaintiff with chronic low back pain and found that he had mild limitations for prolonged walking, bending and kneeling. Id., p. 294.

In May 2014 plaintiff complained of knee pain and was given a cortisone injection for a "flare up of his patellofemoral pain". Id., p. 333. In July 2014 he returned to his

orthopedist after injuring his left knee in a fall. He was diagnosed with "[l]eft knee arthritis with aggravation and knee sprain" and given a knee immobilizer and crutches. Id., p. 337. Two days later he returned to his orthopedist, at which time he denied any pain and stated that his knee was "doing very well". Id., p. 339.

Plaintiff also had a left shoulder issue, which arose in February 2014, when he reported pain in that shoulder. Id., p. 321. His strength in the shoulder in all directions was rated as a 5/5. Id., p. 322. He was diagnosed with subacromial bursitis, which was treated with exercise, physical therapy and Naproxen. Id., p. 323. He returned in March 2014, and reported that he had "some tightness on occasion in his left shoulder but it has greatly improved". Id., p. 373.

After plaintiff's claims were initially denied (id., pp. 84-89, 92-97), an administrative hearing was held on June 10, 2015 before Administrative Law Timothy McGuan, at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 33-61. At the hearing, plaintiff testified that he can stand for 15 minutes at one time and sit for 15 to 20 minutes at one time, and that he would be able to alternate between those positions for up one hour, but would be immobile for the balance of the day. Id., pp. 45, 50-51, 53. The vocational expert testified that an individual with that limitation would not be employable. Id., p. 59.

In his August 20, 2015 decision (id., pp. 17-26), ALJ McGuan found that plaintiff's only severe impairment was his knee, and that he had the residual functional capacity ("RFC") to perform light work, but with the following limitations: "the ability to alternate from sitting to standing or vice versa one hour and can occasionally climb stairs, but cannot climb ropes, ladders or scaffolds and cannot kneel or squat". Id., p. 21. In reaching that determination,

orthopedist after injuring his left knee in a fall. He was diagnosed with "[l]eft knee arthritis with aggravation and knee sprain" and given a knee immobilizer and crutches. Id., p. 337. Two days later he returned to his orthopedist, at which time he denied any pain and stated that his knee was "doing very well". Id., p. 339.

Plaintiff also had a left shoulder issue, which arose in February 2014, when he reported pain in that shoulder. Id., p. 321. His strength in the shoulder in all directions was rated as a 5/5. Id., p. 322. He was diagnosed with subacromial bursitis, which was treated with exercise, physical therapy and Naproxen. Id., p. 323. He returned in March 2014, and reported that he had "some tightness on occasion in his left shoulder but it has greatly improved". Id., p. 373.

After plaintiff's claims were initially denied (id., pp. 84-89, 92-97), an administrative hearing was held on June 10, 2015 before Administrative Law Timothy McGuan, at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 33-61. At the hearing, plaintiff testified that he can stand for 15 minutes at one time and sit for 15 to 20 minutes at one time, and that he would be able to alternate between those positions for up one hour, but would be immobile for the balance of the day. Id., pp. 45, 50-51, 53. The vocational expert testified that an individual with that limitation would not be employable. Id., p. 59.

In his August 20, 2015 decision (id., pp. 17-26), ALJ McGuan found that plaintiff's only severe impairment was his knee, and that he had the residual functional capacity ("RFC") to perform light work, but with the following limitations: "the ability to alternate from sitting to standing or vice versa one hour and can occasionally climb stairs, but cannot climb ropes, ladders or scaffolds and cannot kneel or squat". Id., p. 21. In reaching that determination,

ALJ McGuan gave "some weight" to Dr. Liu's assessment and found plaintiff's allegations of total disability to be "less than fully credible". Id., pp. 23-24.

Based on his RFC and the vocational expert's testimony, ALJ McGuan concluded that plaintiff was not capable of performing his past relevant work as a retail store manager, hand packer or stock clerk, but could perform other jobs, and therefore was not disabled from the alleged onset date through the date of his decision. Id., pp. 25-26. The Appeals Council denied plaintiff's request for review (id., pp. 1-3), and thereafter plaintiff commenced this action.

## ANALYSIS

**A. Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B. Did ALJ McGuan Properly Assess Plaintiff's Capacity to Sit, Stand and Lift?**

Plaintiff argues that ALJ McGuan erred by failing to "cite to any medical . . . or opinion evidence which made it clear how he arrived at his RFC conclusion related to [plaintiff's] ability to lift, stand or sit". Plaintiff's Memorandum of Law [10-1], p. 9.

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order). An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Id. However, in the absence of a competent medical opinion, an ALJ is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018). See Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence").

An exception arises "when the medical evidence shows only minor physical impairments". Perkins, 2018 WL 3372694, *3. In those circumstances, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." Id. Where an ALJ does not rely on "a medical opinion for his RFC determination, the ALJ is further required to provide a function-by-function analysis of [the claimant's] work-related capacity". Ford v. Colvin, 2013 WL 4718615, *8 (W.D.N.Y. 2013). These functions include, *inter alia*, sitting, standing, and lifting. See 20 C.F.R. §404.1545(b).

Here, ALJ McGuan afforded "some weight" to Dr. Liu's consultative opinion that plaintiff had mild restrictions with his ability to walk, bend, and kneel. [7], p. 24. While Dr. Liu did not assess plaintiff with any additional limitations or expressly address his capacity to sit, stand and lift, "the silence of a consultative physician on an issue pertinent to a claimant's RFC is not an appropriate basis on which to resolve that issue to the claimant's detriment." Perez-Rodriguez v. Astrue 2011 WL 6413763, *10 (S.D.N.Y. 2011). *See also* Rodgers v. Colvin, 2018 WL 446220, *3 (W.D.N.Y. 2018) ("the ALJ was not permitted to construe the silence in the record as to Plaintiff's functional capacity as indicating support for his determination as to Plaintiff's limitations"). Thus, as plaintiff argues, "the partial weight assigned to Dr. Liu's opinion does not explain how the ALJ arrived at his specific findings with regards to [plaintiff's] ability to sit, stand, or lift". Plaintiff's Memorandum of Law [10-1], p. 11.

Apparently gleaning from some evidence in the record that plaintiff had additional restrictions other than those imposed by Dr. Liu, ALJ McGuan included a limitation that he alternate between standing and sitting every hour as part of his RFC. Yet, he failed to identify the evidence he, as a layman, relied upon in assessing plaintiff with that very specific functional limitation, or how he determined that plaintiff would otherwise be able to meet the standing and sitting required for light work. "In the absence of a controlling medical opinion, ALJ McGuan should have provided a function-by-function analysis of [plaintiff's] work-related capacity . . . . Because he did not do so, his RFC determination is incomplete". Ford, 2013 WL 4718615, *8.[3]

---

[3] Notwithstanding plaintiff's heavy reliance on Ford, which he characterizes as "strikingly similar" to his case (plaintiff's Memorandum of Law [10-1], p. 13), the Acting Commissioner does not address it.

Pointing to the fact that "it is [p]laintiff's burden to prove disability, including furnishing evidence thereof", the Acting Commissioner argues that "plaintiff is unable to show that any reasonable factfinder was compelled to assess more restrictive functional limitations than already incorporated in the RFC". Acting Commissioner's Memorandum of Law [12-1], pp. 10, 14-15. However, there is evidence in the record that is at least supportive of the existence of more restrictive functional limitations than assessed by ALJ McGuan. In fact, the Acting Commissioner herself recognizes that on July 12, 2012 Dr. David Ratliff, M.D. characterized plaintiff as having a "light duty partial disability" and restricted him at that time to "no prolonged standing or walking and no crouching or climbing" ([7], p. 238). Acting Commissioner's Memorandum of Law [12-1], p. 12. While she argues that the limitation for prolonged standing is "fully consistent" with ALJ McGuan's finding of light work with the ability to alternate between sitting and standing every hour (id., p. 12), that is not an inference ALJ McGuan could make on his own without clarification from Dr. Ratliff or some other medical source.[4]

The Acting Commissioner also points to the fact that plaintiff was doing well after his subsequent August 2012 knee surgery. Acting Commissioner's Brief [12-1], p. 12. However, "[e]ven if record evidence indicated that [plaintiff's] physical condition improved after her knee surgery, a medical opinion is still required to assess her ability to walk, stand, sit, and perform other physical functions." White v. Berryhill, 2018 WL 3569935, *4 (W.D.N.Y. 2018). That is especially so here, when a year or more after his surgery, plaintiff continued to seek treatment for his left knee and reinjured it twice, thereby complicating the medical picture.

In any event, whatever the basis for ALJ's McGuan's determination that plaintiff could meet the standing requirement for light work by alternating between sitting and standing

---

[4] For example, it is equally possible that prolonged standing refers to plaintiff's overall capacity to stand throughout a work day, as opposed to his ability at stand at one time.

every hour, he failed to sufficiently articulate that in his opinion, thereby precluding meaningful review. The Acting Commissioner's attempts to fill that gap by now pointing to evidence supportive of the RFC (Acting Commissioner's Memorandum of Law [12-1], p. 12) "is not an adequate substitute for properly-executed RFC assessment provided by ALJ McGuan in his decision". Ford, 2013 WL 4718615, *9. "Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. Perkins, 2018 WL 3372964, *4. Therefore, I conclude that ALJ McGuan's RFC assessment is not supported by substantial evidence, and that remand is required.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [10] is granted to the extent that this case is remanded to the Acting Commissioner for further proceedings consistent with this Decision and Order, and the Acting Commissioner's motion [12] is denied.

**SO ORDERED**.

Dated: November 15, 2018

   /s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge